### 62046, 62085. HAMBRICK v. FIDELITY ACCEPTANCE CORPORATION (two cases).

McMurray, Presiding Judge.

Danny Hambrick purchased an automobile on September 16, 1978, obtaining automobile insurance (collision, fire, theft, comprehensive and combined) from Cotton States Mutual Insurance Company with a loss payee clause in favor of Fidelity Acceptance Corporation (Fidelity) which financed the purchase of the automobile by an assignment from the seller.

Both the loss payee and Hambrick received a notification with mailing date "2-26-80" that the policy "is hereby cancelled as to all interests insured" for non-payment by reason of a bad check (bounced) effective at 12:00 noon on the date shown in the notice. The date "3-9-80," in addition to the mailing date "2-26-80," is shown on the notification from Cotton States Mutual Insurance Company, but the notification fails to designate either of these dates as the date of cancellation. Hambrick then received a letter dated "2-27-80" from Fidelity, advising him to immediately obtain comprehensive and collision insurance coverage on the automobile and advising that if he were not able to obtain same "within a few days," Fidelity would assist in obtaining the proper insurance coverage but to give it his immediate attention. Hambrick contends he then contacted the insurer and obtained reinstatement of the insurance and was advised by Fidelity that everything was satisfactory. A letter dated March 11, 1980, was then mailed to Columbus Insurance Agency by Cotton States Mutual Insurance Company advising that the policy had been reinstated effective the date of the cancellation and that coverage represented by the policy had been continuous and to disregard the

notice of cancellation and accept this letter as evidence of reinstatement.

Hamrick then contends that Fidelity took his car about 1:15 a.m. on March 13, 1980. On the same date, after 9:00 a.m., he went by the insurance office (apparently Choice Insurance Agency) and picked up a speed letter addressed to Fidelity Acceptance Corporation which he took to Fidelity and showed to an employee and asked him why Fidelity had taken his automobile and was told because of insurance. The speed letter refers to a conversation with Cotton States on "3-13-80" that the policy had been reinstated on "3-11-80" and a copy of the reinstatement letter was being forwarded immediately to Fidelity. Thus, on March 13, 1980, Fidelity took possession of the automobile financed by it even though Hambrick, the insured, had obtained reinstatement of the insurance, and it demanded payment in full of the indebtedness with reference to the automobile and proceeded to sell the repossessed automobile.

Thereafter Hambrick sued Fidelity for the value of the repossessed automobile seeking in Count 1 damages in the amount of $6,000, $30,000 in punitive damages and reasonable attorney fees; and in Count 2, seeking the sum of $6,000 plus reasonable attorney fees for breach of the contract allegedly by reason of bad faith of the defendant. The defendant answered, in general, denying the claim.

After discovery, the case proceeded to trial with the above facts as disclosed by plaintiff's testimony. At the completion of plaintiff's testimony the defendant moved for directed verdict based upon plaintiff's testimony showing a default by reason of cancellation of the insurance, thereby enabling the defendant creditor to take possession under Code Ann. § 109A-9—503 (Ga. L. 1978, pp. 1081, 1130). The trial court denied this motion, orally holding that there was an issue of fact as to whether or not the insurance company on March 9, 1980, had any obligation to verify that cancellation of the insurance policy in fact had occurred before they decided to hold the loan in default.

Counsel for the defendant then moved for a directed verdict with reference to punitive damages and attorney fees in that there had been no showing of bad faith on the part of the defendant. Counsel for plaintiff then admitted that there had been no evidence at that point in the trial on the question of attorney fees. The trial court in ruling on the motion held that there had been no evidence that would merit the allowance of punitive damages in that there was no showing of bad faith or wilful or malicious conduct and no evidence of attorney fees whatever. The trial court instructed the jury as to its verdict with reference to the direction by the court as to punitive damages and attorney fees. But prior to the return of that

verdict by the jury a voluntary dismissal was entered. The court held that the motion for directed verdict was already granted as to punitive damages and attorney fees; hence these were no longer pending at the time of the voluntary dismissal. Judgment was then entered as granted in favor of the defendant against the plaintiff as to all claims of punitive damages and attorney fees and called attention to the fact that the plaintiff had voluntarily dismissed without prejudice "all other issues" in the complaint.

Plaintiff appeals, enumerating as error the trial court's direction to the jury to enter a verdict denying punitive damages after plaintiff had dismissed the case and in directing a verdict against the plaintiff on the question of punitive damages. Out of an abundance of caution it appears that the plaintiff has appealed in both Case No. 62046 and Case No. 62085 inasmuch as a nunc pro tunc order was a part of the judgment entered on December 9, 1980, "nunc pro tunc to the 28th day of October, 1980." In Case No. 62046 the notice of appeal was dated November 24, 1980, and filed on November 25, 1980, before the nunc pro tunc order. The notice of appeal in Case No. 62085 was dated December 11, 1980, and filed on December 15, 1980, after the issuance of the nunc pro tunc order. However, these cases are complete duplicates. *Held:*

1. Prior to *Jones v. Burton,* 238 Ga. 394, 396 (233 SE2d 367), it was not error for a plaintiff to voluntarily dismiss his case after the trial judge had announced in open court the direction of a verdict for the defendant and while the verdict directed was being prepared but before it was actually entered by the trial judge. See such cases as *Macon, Dublin &c. R. Co. v. Leslie,* 148 Ga. 524 (97 SE 438); *Cowart v. Atlanta, Birmingham &c. R. Co.,* 58 Ga. App. 466 (198 SE 795); *Wilson v. Matthews,* 120 Ga. App. 284 (170 SE2d 346); *Hobgood v. Neely,* 139 Ga. App. 135 (228 SE2d 30). The *Wilson, Hobgood* and *Leslie* cases were expressly disapproved in *Jones v. Burton,* 238 Ga. 394, 396, supra, based upon the Civil Practice Act. Procedurally, the trial court did not err in directing the verdict (but not as to the merits) at the end of the trial as to the punitive damages even though plaintiff attempted to voluntarily dismiss the case prior to the written entry of the verdict as directed by the court inasmuch as the trial court had already verbally ordered same. As the law now stands in civil cases, the announcement by a trial judge of a decision terminating the case, "though that decision has not been formally reduced to writing and entered," precludes the filing of a voluntary dismissal after the announcement but before the judgment is actually entered.

The record is unclear as to the sequence of events surrounding the filing of plaintiff's voluntary dismissal. Plaintiff contends that the court had directed the verdict as to the matter of punitive

damages only after plaintiff had filed his voluntary dismissal, arguing that the court's announcement that "I don't think there has been any evidence whatsoever that would merit even allowing a jury to consider punitive damages in this case," was not a sufficient ruling from the trial court on the motion for directed verdict as to punitive damages. As has been often stated, there is no magic in nomenclature. It is clear from the subsequent remarks of the trial court that it considered this announcement to be a ruling upon the motion for directed verdict. The announcement by the trial court of its decision that there was no sufficient evidence presented so as to present an issue regarding punitive damages to the jury was sufficient to trigger the rule set forth in *Jones v. Burton,* 238 Ga. 394, 396, supra, and preclude the subsequent filing of a voluntary dismissal as to the issues upon which a verdict was directed.

2. We reject the defendant's suggestion that the issues raised by plaintiff's appeal as to the trial court's ruling directing verdict on the issue of punitive damages is rendered moot due to the subsequent voluntary dismissal of the remaining issues. Defendant's contention is predicated upon the rule that punitive damages are additional damages and cannot stand alone. Thus, in *Beverly v. Observer Pub. Co.,* 88 Ga. App. 490 (77 SE2d 80), relied upon by the defendant, the claim for punitive damages was not allowed where neither general nor nominal damages were prayed for and special damages were not recoverable as the punitive damages in that case would not have been additional. In the case sub judice a refiling of the action predicated upon those issues which were voluntarily dismissed will provide a foundation upon which a claim for punitive damages might rest. However, the trial court's direction of the verdict in favor of defendant in the case sub judice would stand as res judicata and be a bar to possible recovery on these additional damages in a subsequent action. Therefore, any error in the decision of the trial court which this court failed to correct would present irreparable harm to plaintiff.

3. Generally, in a secured transaction, where a debtor has defaulted in the payment of the contract of indebtedness, the secured creditor is entitled "to take possession of the collateral" unless "otherwise agreed" to between the parties. Code Ann. § 109A-9—503, supra. See also *Baker v. Chrysler Credit Corp.,* 154 Ga. App. 325 (268 SE2d 722).

4. The security agreement between plaintiff and defendant imposed a duty upon the plaintiff to not only insure the secured property fully but also to "pay the premium thereon when due." Any breach or default of this covenant would authorize defendant to accelerate the debt and exercise any of the rights and remedies of a

secured party. Although there are some ambiguities in the cancellation notice from plaintiff's insurance company, it is clear that the reason for the cancellation of the insurance policy was plaintiff's nonpayment. There is considerable evidence in the record as to the circumstances surrounding the supposed cancellation and retrospective reinstatement of the insurance policy, but the evidence of plaintiff's breach of the covenants of the security agreement by failing to timely pay the premium on the required insurance policy is uncontradicted.

Therefore, if plaintiff is to recover it must be on the basis of a subsequent contractual arrangement between himself and defendant superseding the provisions of the security agreement. Plaintiff relies upon the language of a letter sent him by defendant shortly after the insurance company issued notice of cancellation. Due to its importance to the issues here the body of the letter, dated "2-27-80," is set forth in full:

"It is necessary that arrangements be made immediately to obtain comprehensive and collision insurance coverage on your automobile. Please contact your agent TODAY!

"If you are unable to obtain satisfactory insurance coverage within a few days, please stop in or phone our office. We will assist in obtaining the proper insurance coverage for you.

"It is absolutely necessary that you comply with this request. Please give it your immediate attention."

After receiving the above letter from defendant the plaintiff took the action which resulted in the reinstatement of the insurance effective the date of the cancellation so that coverage afforded by the policy was continuous and without lapse. The plaintiff then went to defendant's office and explained to one of defendant's employees that he had gotten the insurance reinstated. Plaintiff testified that defendant's employee, with whom he spoke, told him "it is all right now; everything is straight." Defendant thereafter repossessed plaintiff's car by the use of self-help repossession.

The evidence presented at trial presents some evidence from which a jury might infer that the letter from defendant to plaintiff constituted an offer by defendant to waive its rights arising from the default caused by the failure to timely pay the insurance premium if plaintiff could arrange for the reinstatement of insurance within a reasonable time. The jury would also have been authorized to conclude that defendant's action constituted an acceptance of that offer.

The question remains as to whether there was any evidence authorizing a verdict for punitive damages. As defendant states, to authorize the imposition of punitive or exemplary damages there

must be evidence of wilful misconduct, malice, fraud, wantonness or oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences. We believe that the evidence of actions on the part of the defendant should have been submitted to the jury for its determination of whether such actions amounted to a wilful inducement to plaintiff to expend the resources of time and money to obtain reinstatement of the insurance only to have his automobile repossessed by defendant after learning that plaintiff had succeeded in this task. A jury issue remains as to whether such evidence shows the elements of wilful misconduct, malice, wantonness, oppression as would authorize the right of a verdict for punitive damages. Also some evidence is shown of the five essential elements of fraud as it may be inferred from defendant's actions that the implicit representation made by defendant to plaintiff that no acceleration of the debt would occur if plaintiff arranged prompt reinstatement of the insurance was knowingly false when made and with the intention and purpose of deceiving the plaintiff; that plaintiff relied on defendant's misrepresentation and sustained losses as the proximate result of those misrepresentations having been made. The issue of punitive damages required determination by the jury, therefore the trial court erred in directing the verdict as to plaintiff's claim for punitive damages.

*Judgment reversed. Quillian, C. J., and Pope, J., concur.*

DECIDED SEPTEMBER 14, 1981.

*Scott Walters, Jr., Jimmy D. Harmon,* for appellant.
*John L. Green,* for appellee.